NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARISSA M.,<br><br>                  Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                  Defendant. | Civil Action No.: 21-18821<br><br>**OPINION** |

**CECCHI, District Judge.**

**I.    INTRODUCTION**

Before the Court is the appeal of Marissa M.[1] ("Plaintiff") seeking review of a final decision by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") and supplemental security income pursuant to Title II and Title XVI of the Social Security Act ("SSA" or the "Act"). This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

**II.   BACKGROUND**

Plaintiff is a 37-year old female with a degree from Caldwell University. Tr. at 39, 82. She lives in Westfield, New Jersey with her father and her son. *Id.* at 48, 49, 82. Previously, she worked as a teacher's assistant and a food demonstrator at a supermarket. *Id.* at 17, 23.

In 2018, Plaintiff was diagnosed with Lyme disease, Babesiosis, Bartonella, Malaria, liver

---

[1] Pursuant to District of New Jersey standing order 2021-10, "any non-governmental party will be identified and referenced solely by first name and last initial" due to privacy concerns present in social security cases. D.N.J. Standing Order 2021-10; *see also Bryan S. v. Kijakazi*, No. 20-cv-11145, 2022 WL 2916072, at *1 n.1 (D.N.J. July 25, 2022).

flukes, and other viral and parasitic infections. *Id.* at 18. As a result of her infections, Plaintiff reports that she has experienced brain fog and anxiety, as well as joint pain, allergies, and dermatitis. *Id.* at 21. In August 2018, Plaintiff began treatment for her infections at the Sponaugle Wellness Institute in Florida. *Id.* at 21, 23, 49. Treatment there lasted five months, ending approximately in December 2018. *Id.* at 49. While she was a patient at the Sponaugle Wellness Institute, Plaintiff had doctor appointments at the clinic every day. *Id.* at 43. Thereafter, for about the entirety of 2019, she continued to receive treatment for her diseases at the Gedroic Medical Institute in New Jersey. *Id.* at 22–23. As part of her treatment at these clinics, Plaintiff was administered medication daily through a peripherally inserted central catheter ("PICC") line. *Id.* at 22. Around January 2020, Plaintiff's PICC line was removed, and she began attending her medical appointments via videoconferencing, in part due to restrictions related to the COVID-19 pandemic. *Id*. at 24. Further, while she continues to be on a consistent regimen of oral medications, she is only required to receive intravenous treatment about once a month. *Id.* at 69–72.

On February 12, 2019, Plaintiff filed an application for DIB and an application for supplemental security income, alleging disability beginning on January 23, 2018. Plaintiff's claim for DIB was denied initially on June 12, 2019, and upon reconsideration on October 9, 2019. *Id.* at 13. Plaintiff requested and was granted a hearing before an ALJ held on June 8, 2020, at which Plaintiff testified. *Id.* Due to an administrative error, a vocational expert was not present at this initial hearing; thus, a supplemental hearing was held on December 4, 2020 to allow a vocational expert to testify regarding the case. *Id.* On January 25, 2021, the ALJ determined that Plaintiff was disabled from August 1, 2018 until December 31, 2019. However, the ALJ also determined that she experienced medical improvement rendering her not disabled beginning January 1, 2020. *Id.* at 14. Thereafter, on August 12, 2021, the Social Security Administration's Appeals Council

denied Plaintiff's request for review of the ALJ's decisions. *Id.* at 1. This appeal followed.

### III.   LEGAL STANDARD

#### A.   Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and substantiated by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citations omitted). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

#### B.   Determining Disability

In order to be eligible for benefits under the SSA, a claimant must show she is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Considering the claimant's age, education, and work experience, disability is evaluated by the claimant's ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B). A claimant is disabled for SSA purposes only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability are made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)).  Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3); 1382(a)(3)(D).

    C.    **Sequential Evaluation Process For A Continuing Disability**

Under the SSA, the Commissioner may determine that a recipient of disability benefits ceases to be entitled to those benefits upon "finding that the [original] physical or mental impairment . . . has ceased, does not exist, or is [no longer] disabling." 42 U.S.C. § 423(f). One situation where such a finding may be made is where substantial evidence indicates that there has been a medical improvement in the impairments and that the plaintiff, at the time of the decision, is able to engage in substantial gainful activity. 42 U.S.C. § 423(f)(1). To determine if benefits should continue or if a change is warranted, the Social Security Administration deploys an eight-

step process for evaluating the status of a plaintiff's disability. *See* 20 C.F.R. § 404.1594(f).

At step one, the Commissioner must determine if the plaintiff is engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If she is engaged in substantial gainful activity, then she will be considered no longer disabled. *Id.* If she is not engaged in any such activity, the analysis proceeds to step two. *Id.*

At step two, the Commissioner evaluates whether the plaintiff has "an impairment or a combination of impairments that either meets or equals the severity of an impairment listed in [20 C.F.R. Part 404, Subpart P, Appendix 1]." 20 C.F.R. § 404.1594(f)(2). If the plaintiff meets or equals a listed impairment, then the disability continues. *Id.* If not, the analysis goes on to the third step. *Id.*

At step three, the Commissioner must determine whether there has been a medical improvement in the claimant's condition. 20 C.F.R. § 404.1594(f)(3). The definition of medical improvement is "any decrease in the medical severity" of the relevant impairment that is established by improvements "in the symptoms, signs, and/or laboratory findings." 20 C.F.R. § 404.1594(b)(1). In making this determination, the Commissioner compares the medical severity of the impairments from the point of the most recent favorable determination with the current severity of the impairments. 20 C.F.R. § 404.1594(b)(7). If a medical improvement has occurred, then the analysis proceeds to step four. 20 C.F.R. § 404.1594(f)(3). If a medical improvement has not occurred, then the analysis skips to step five. *Id.*

At step four, the Commissioner must determine whether the medical improvements found in step three have any impact on the plaintiff's ability to do work. 20 C.F.R. § 404.1594(f)(4). The relationship of a medical improvement to the ability to perform work is determined by looking at whether the medical disability has resulted in an increase of the plaintiff's residual functional

5

capacity ("RFC"). 20 C.F.R. § 404.1594(b)(3). "If [the] medical improvement is not related to [the] ability to do work," then the analysis proceeds to step five. 20 C.F.R. 404.1594(f)(4). If it is related, then the analysis goes to step six. *Id.*

At step five, the Commissioner determines if one of two sets of exceptions to medical improvements applies. 20 C.F.R. § 404.1594(f)(5). If an exception does not apply, then the plaintiff's disability continues. *Id.* On the other hand, if an exception from the first group is applicable, then the analysis goes to step six. *Id.* If a second group exception applies, then the claimant's "disability will be found to have ended." *Id.*

At step six, the Commissioner is required to determine whether the plaintiff's "impairments in combination are severe." 20 C.F.R. § 404.1594(f)(6). If all of the plaintiff's "current impairments in combination do not significantly limit [the plaintiff's] physical or mental abilities to do basic work activities," then the impairments will be deemed not to be severe, and the disability will be terminated. *Id.* However, if a significant limitation to do basic work is found, then the analysis proceeds to the next step. *Id.* Basic work is defined as "the abilities and aptitudes necessary to do most jobs," consisting of exertional abilities such as "walking, standing, pushing, pulling, reaching, and carrying" and "nonexertional abilities and aptitudes such as seeing, hearing, speaking, remembering, using judgment, dealing with changes and dealing with both supervisors and fellow workers." 20 C.F.R. § 404.1594(b)(4).

At step seven, the Commissioner evaluates the plaintiff's ability to perform past relevant work. 20 C.F.R. § 404.1594(f)(7). If the claimant can perform past relevant work, then the disability has ended. *Id.* If she cannot, then the analysis proceeds to the last step, step eight. *Id.*

At step eight, the Commissioner evaluates the ability of the plaintiff to perform other work in the national economy. 20 C.F.R. § 404.1594(f)(8). This analysis takes into account a claimant's

RFC, age, education, and past work experience. *Id.* If the plaintiff is found to be able to perform other work in light of these factors, then the disability ends. *Id.* If not, the disability continues. *Id.*

## IV. DISCUSSION

### A. Summary of the ALJ's Decision

While Plaintiff has asserted a disability onset date of January 23, 2018, due to a purported dearth of medical records, the ALJ found Plaintiff was not disabled before August 1, 2018. *Id.* at 18–19. However, the ALJ determined that Plaintiff was disabled within the meaning of the SSA from August 1, 2018 through December 31, 2019. *Id.* at 22–24. Further, the ALJ concluded that beginning on January 1, 2020, Plaintiff experienced medical improvement related to her ability to work, and that, as a result of this improvement, Plaintiff's functional capacity to engage in basic work activities increased beginning January 1, 2020 through the date of the ALJ's decision. *Id.* at 24–26. Thus, the ALJ determined that Plaintiff was not disabled from January 1, 2020 through the date of the decision. *Id.* In reaching this determination, the ALJ engaged in the sequential analysis enumerated in 20 C.F.R. § 404.1594(f).

Specifically, at step one, the ALJ found that Plaintiff was not engaged in substantial gainful activity, as she had not worked since June 2018, and from January 2018 until June 2018, she worked at a level that did not meet the threshold for substantial gainful activity. Tr. at 17.

At step two, the ALJ determined that beginning on January 1, 2020, Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the relevant impairments enumerated in 20 C.F.R. Part 404, Subpart P, App'x 1. Tr. at 24.

At step three, the ALJ concluded that medical improvement occurred. Specifically, the ALJ noted that Plaintiff testified her PICC line was removed in December, and since its removal, the frequency of her intravenous infusions decreased to approximately once a month. Tr. at 24.

7

Moreover, Plaintiff testified that she attends some of her medical appointments via videoconference. *Id.* Further, the ALJ noted that the only medical evidence in the record dated after January 1, 2020 consisted of laboratory test records, which displayed normal results. *Id.* at 24 (citing exhibits 5F and 6F).

At step four, the ALJ considered whether Plaintiff's medical improvements impacted her ability to perform work related activities. *Id.* at 25. Here, the ALJ recognized that Plaintiff's infections could reasonably be expected to produce her alleged symptoms, including brain fog, anxiety, joint pain, allergies, and dermatitis. *Id.* However, the ALJ found that the medical record did not fully support Plaintiff's contentions because, as noted above, Plaintiff's PICC line had been removed, the frequency of her treatments had decreased, and the only medical evidence in the record dated after January 1, 2020 was laboratory reports, reflecting normal results. *Id*. Based on the evidence in the record, the ALJ determined that Plaintiff's functional capacity to perform basic work increased.

Because the ALJ next determined plaintiff's improvement had increased Plaintiff's functional capacity for work, the ALJ skipped step five, pursuant to the regulations, and moved to step six. At step six, the ALJ found that, consistent with the record, Plaintiff's impairments did not significantly limit her ability to perform work related functions, and thus Plaintiff's impairments were non-severe. *Id.* at 25. As the impairments were found to be non-severe, the ALJ concluded that Plaintiff was not disabled as of January 1, 2020. *Id.* at 26.

### B.    Plaintiff's Arguments on Appeal

In the instant appeal, Plaintiff argues that the ALJ's decision must be vacated because she erred in determining that Plaintiff's medical condition improved as of January 1, 2020. Specifically, Plaintiff argues that the ALJ identified no medical evidence dated after December 31,

2019, the most recent point for a favorable decision, demonstrating Plaintiff experienced any medical improvement. Instead, Plaintiff asserts that the ALJ improperly assumed that because Plaintiff was no longer being administered treatment through a PICC line, and her in-person medical appointments had become less frequent, her conditions had improved. This finding, according to Plaintiff, is belied by Plaintiff's testimony wherein she represented that even after the PICC line was removed, she continued to receive intravenous and oral medications, and is seen by her doctors multiple times each week, albeit remotely due to COVID-19. Moreover, Plaintiff continued to represent she experienced symptoms including anxiety and brain fog. ECF No. 10 at 10–14.

To determine whether an individual medically improved, the ALJ must compare the medical severity of the relevant impairments from the point of the most recent favorable determination with the current severity of the impairments. *See* 20 C.F.R. § 404.1594(b)(7); *see also Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 307 (3d Cir. 2012). Here, the ALJ properly applied this standard by comparing the record reflecting the time for which the ALJ found Plaintiff disabled (August 1, 2018 until December 31, 2019) with the records from after the period of disability. Specifically, the ALJ found that during the period of disability Plaintiff was diagnosed with Lyme disease, Babesiosis, Bartonella, Malaria, Liver flukes, and multiple other viral and parasitic infections. Tr. at 18, 21. As a result of these infections, the ALJ noted that Plaintiff alleged she suffered severe symptoms, which the ALJ credited as being consistent with the medical evidence in the record. *Id.* at 18–24. Further, the ALJ acknowledged that from August 2018 until December 2018, she underwent daily treatment at the Sponaugle Wellness Institute in Florida. *Id.* at 21, 23. Moreover, the ALJ noted that as part of her treatment plan, Plaintiff received daily medication via a PICC line. *Id.* at 21–23. The ALJ further recognized that from January 2019 until

9

December 2019, Plaintiff continued her treatment in New Jersey, at the Gedroic Medical Institute. *Id.* at 22–23. The ALJ concluded that, due to the frequency of her treatment regimen—every day for much of 2018 and 2019—and the severity of her infections, which necessitated a PICC line, Plaintiff would miss at least three days of work per month. *Id.* at 23. The vocational expert testified that no jobs existed in the national economy with this limitation. *Id.* at 77. Accordingly, based on the evidence, the ALJ determined that Plaintiff was disabled from August 1, 2018 until December 31, 2019.

By comparison, the ALJ also noted that beginning January 1, 2020, despite her testimony representing she still suffered from symptoms, including brain fog and joint pain, Plaintiff received very little treatment for her conditions. *Id.* at 24–25. In particular, the ALJ noted that Plaintiff testified her PICC line was removed in December 2019, and, related, the frequency of her intravenous infusions had decreased to about once a month. *Id.* at 24. Moreover, Plaintiff testified that her medical appointments were usually held via videoconferencing, and that much of her treatment plan utilized oral medications. *Id.* at 21, 68–72. Accordingly, Plaintiff testified that instead of receiving in-person treatment daily, she would physically visit with her medical team "a few times a month." *Id.* at 72. Finally, the ALJ found that the record contained limited medical evidence from January 1, 2020 onward—namely, the record contained only laboratory testing records, reflecting largely normal results. *Id.*at 24. Based on these changes in her condition, the ALJ determined that Plaintiff would miss one day of work a month, and the vocational expert testified that jobs existed in the national economy consistent with this limitation. *Id.* at 76–77. In sum, as the ALJ compared Plaintiff's current impairments with her impairments at the time of her most favorable determination—that is, December 31, 2019—the ALJ applied the correct standard and based her decision on the substantial evidence in the record. *G.B. v. Comm'r of Soc. Sec.*, No.

19-cv-15117, 2021 WL 6062257, at *2–*3 (D.N.J. Dec. 22, 2021) (finding ALJ's conclusion supported by substantial evidence where ALJ compared the disability period with the current period); *see also Ross v. Astrue*, No. 08-cv-4980, 2009 WL 4250060, at *7–*8 (D.N.J. Nov. 24, 2009).

Notwithstanding this comparison, Plaintiff argues that the ALJ incorrectly concluded that Plaintiff medically improved after December 31, 2019. The Plaintiff asserts that the removal of her PICC line and reduction in the number of in-person medical appointments does not indicate the end of her illnesses or the cessation of her involved medical treatments. ECF No. 10 at 9–10. Plaintiff avers she must still have blood work done, receive treatment intravenously, and attend telemedicine appointments, negatively impacting her ability to work. *Id.* at 10; ECF No. 14 at 1. Plaintiff contends that "it would be erroneous to assume [her] condition improved." *Id.* at 14. However, Plaintiff has not pointed to any medical evidence in the record to substantiate her argument. *See Smalls v. Commissioner of Soc. Sec.*, No. 09-cv-2048, 2010 WL 2925102, at *7 (D.N.J. July 19, 2010) (affirming ALJ decision where plaintiff failed to identify medical evidence in the record to refute ALJ's finding that plaintiff experienced medical improvement); *see also Schmidt v. Colvin,* No. 14-cv-590, 2015 WL 5769982 (W.D. Pa. Sept. 30, 2015) (same). And in any event, as noted above, in making her findings, the ALJ explicitly considered that since January 1, 2020, Plaintiff has continued to receive treatment and experience symptoms attributable to her infections. Thus, to agree with Plaintiff that the ALJ misinterpreted the evidence in the record or should have reached a different conclusion would require the Court to "reweigh the evidence," *G.B*, 2021 WL 6062257, at *2, a task which it may not do. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) ("The ALJ's decision may not be set aside merely because we would have reached a different decision")

11

(citation omitted)).

In sum, the ALJ properly applied the sequential analysis, and, based her finding that Plaintiff was not disabled from January 1, 2020 through the date of decision on the substantial evidence in the record.

## V. CONCLUSION

For the reasons above, the ALJ's decision is affirmed. An appropriate Order will follow.

**DATE:** January 10, 2023

s/ Claire C. Cecchi

**CLAIRE C. CECCHI, U.S.D.J.**
